**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

United States of America

v.                                                    Case No. 1:22-cv-271-LM

Frederick J. Fuller, Individually
and as Trustee of the Bow Sterling
Place Realty Trust, et al.

**REPORT AND RECOMMENDATION**

The government brought suit against Frederick J. Fuller,
individually and as trustee of the Bow Sterling Place Realty
Trust (the "Trust"), seeking to reduce to judgment Fuller's
unpaid federal tax liabilities pursuant to 26 U.S.C. §§ 6651,
6654.  See Compl. (Doc. No. 1).  The government also seeks
judgments from this court that the federal tax liens for
Fuller's tax liabilities attach to real property owned by the
Trust, with priority over judgment liens, and permitting the
government to enforce its tax liens pursuant to 26 U.S.C. §
7403.  Nichole Wilkins, Raymond Mulcahey as Administrator of the
Estate of Beverly Mulcahey, and the Town of Bow, New Hampshire,
as lienholders of the real property owned by the Trust, are also
named defendants with respect to the government's lien priority
claim.[1]

---

[1] Raymond C. Green Funding, LLC was also a named defendant
as a lienholder of the Trust property.  On September 1, 2022,

Fuller failed to respond to the government's complaint, and
on October 31, 2022, the Clerk of Court entered default against
him.  (Doc. No. 17).  Before the court for recommendation as to
disposition is the government's motion for default judgment as
to Fuller pursuant to Federal Rule of Civil Procedure 55(b)(2).
(Doc. No. 20).  For reasons explained below, the court
recommends that the government's motion be granted and that
judgment be awarded in the amount of $687,379.12, subject to
statutory additions and interest.

## STANDARD OF REVIEW

When a party moves for a default judgment under Rule
55(b)(2), the court "may examine a plaintiff's complaint, taking
all well-pleaded factual allegations as true, to determine
whether it alleges a cause of action." Ramos-Falcon v.
Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002).
The defaulting party is "taken to have conceded the truth of the
factual allegations in the complaint." Ortiz-Gonzalez v.
Fonovisa, 277 F.3d 59, 62 (1st Cir. 2002).  Admitting the truth
of the factual allegations, however, "does not admit the legal

---

however, the company filed a "Discharge of Mortgage Deed"
indicating that the mortgage had been satisfied.  Accordingly,
pursuant to the parties' joint motion to dismiss Raymond C.
Green Funding, LLC (Doc. No. 12), it is no longer a party to
this case.

sufficiency of [the] claims."  10 James W. Moore, Moore's

Federal Practice § 55.32[1][b] (3d ed. 2013).  For that reason,

the court reviews the admitted facts in light of the elements of

the claims pleaded before entering a default judgment.  Sampson

v. Lambert, 903 F.3d 798, 805-06 (8th Cir. 2018); Neff v.

Mediation Processing Servs., LLC, No. 21-CV-310-JL, 2021 WL

7082838, at *1 (D.N.H. Sept. 27, 2021), report and

recommendation adopted, No. 21-CV-310-JL, 2021 WL 7082833

(D.N.H. Oct. 14, 2021).

## BACKGROUND

By virtue of his default, Fuller concedes the following

facts alleged in the government's complaint.  On July 27, 2011,

Fuller acquired real property, situated at 43 Sterling Place,

Bow, New Hampshire (the "Bow Property"), as trustee of the Bow

Sterling Place Realty Trust through a warranty deed recorded

with the Merrimack County Registry at Book 3265, Pages 0486-

0489.  Compl. (Doc. No. 1, ¶ 24).  As stated in a Certificate of

Trustee document dated December 16, 2013 and recorded with the

Merrimack County Registry at Book 3425, Page 469, Fuller is both

the sole trustee and the sole beneficiary of the Trust.  Id. ¶

31.  Where Fuller treated the assets of the Trust as his own,

the Trust has been operated as the alter ego of Fuller.  Id. ¶¶

31-32.  In addition, Fuller operated the Trust as a sham trust

3

that holds record title to the Bow Property as a nominee of the true owner, Fuller.  Id. ¶ 33.

On April 9, 2012, the Secretary of the Treasury made assessments against Fuller for income taxes during the tax period ending on December 31, 2008.  Id. ¶ 9.  The tax assessment amount of $493,147.00 was reached by agreement between Fuller and the government.  Id. ¶¶ 9-10.  As of April 26, 2022, Fuller had a tax liability balance due in the amount of $637,228.22, reflecting assessed and accrued late-filing penalties, penalties for failure to make estimated tax payments, costs, and statutory interest as of that date.  Id. ¶ 9.  The government provided proper notice and demand for payment of these tax liabilities, but to date, Fuller has failed to pay the balance due.  Id. ¶ 11.

On July 21, 2022, the government filed suit against Fuller, as well as against the other lienholders of the Bow Property, seeking to: (1) reduce Fuller's tax liabilities to judgment; (2) determine that the government's federal tax liens attach to the Bow Property owned by the Trust with priority over judgment liens; and (3) enforce the federal tax liens under 26 U.S.C. § 7403.  Fuller was served with a copy of the summons and complaint on August 18, 2022.  (Doc. No. 3).  When Fuller did not file a response to the complaint within the time allowed, the Clerk of Court entered default against him (Doc. No. 17),

and the government moved for default judgment.  (Doc. No. 20).

The court held a case management conference on February 9, 2023,

and following that conference, on April 14, 2023, the government

submitted a supplemental brief, which included clarification on

the sufficiency of the government's claims, as well as

additional documentation to support Fuller's tax liabilities.

(Doc. No. 25).

## DISCUSSION

The government brings three claims against Fuller: in Count

I it seeks to reduce Fuller's tax liabilities to judgment; in

Count II it seeks a ruling that its federal tax liens attach to

the Bow Property owned by the Trust with priority over judgment

liens; and in Count III it seeks permission to enforce the tax

liens under 26 U.S.C. § 7403.  The government moves for default

judgment on all claims and seeks the entry of judgment in the

amount of $675,929.44, subject to statutory additions and

interest, which continue to accrue pursuant to 26 U.S.C. §§

6601, 6621, and 6622, and 28 U.S.C. § 1961(c).

## I.  Liability

### A. Count I

"26 U.S.C. § 6651(a)(2) imposes a penalty for failure to

pay taxes due on or before the date prescribed for payment of

such unless it is shown that such failure is due to reasonable

cause and not due to willful neglect."  Kennedy v. United

States, 542 F. Supp. 1046, 1049 (D.N.H. 1982) (quotation omitted).  Under the statute, "the imposition of such penalties is mandatory absent a satisfactory demonstration by the taxpayer that its failure to comply was due to reasonable cause and not due to willful neglect . . . ."  Id. (quotation omitted).  26 U.S.C. § 6654 similarly imposes a penalty for failure to make estimated tax payments.

### 1. Timeliness of the Government's Claim

Court proceedings to collect a tax liability must be made "within 10 years after the assessment of the tax."  26 U.S.C. § 6502(a)(1).  The limitations period is tolled, however, while a Collection Due Process ("CDP") hearing and appeal is pending.  26 U.S.C. § 6330(e)(1).

The government's assessment of Fuller's 2008 tax liabilities occurred on April 9, 2012.  According to the admitted allegations in the complaint, Fuller filed a CDP hearing request on October 1, 2012.  Compl. (Doc. No. 1, ¶ 17).  On February 11, 2013, following the CDP hearing and notice of determination, Fuller appealed the determination to the Tax Court.  Id. ¶ 18.  On October 7, 2014, the Tax Court entered a decision affirming the determination and stipulating that the taxpayer waived any restrictions provided in 26 U.S.C. § 6330(e).  Id.  Accordingly, the limitations period was tolled from October 1, 2012 through October 7, 2014 for a total of 736

days.  Where the initial limitations period would have run on
April 9, 2022, the tolling period of 736 days extended the
limitations period to April 14, 2024.  Where the government
initiated this action against Fuller on July 21, 2022, the court
is satisfied that the government's claim against Fuller is
timely.

## 2. Sufficiency of the Claim

The admitted facts in the complaint establish the
government's claim against Fuller.  Specifically, the government
adequately states that Fuller owed income tax liabilities for
the 2008 tax year and that despite receiving proper notice of
these tax liabilities, Fuller failed to pay the balance due.
Accordingly, the government is entitled to default judgment as
to liability on Count I.

## B. Count II

In Count II, the government seeks a ruling from this court
that: (1) its federal tax liens attach to the Bow Property owned
by the Trust; and (2) the federal tax liens have priority over
other judgment liens.  The non-defaulting parties, however,
stipulated to the order of priority, (Doc. No. 21), rendering
the issue moot.[2]  Thus, the court considers only whether the

---

[2] During the February 9, 2023 case management conference,
the court raised concerns about the entry of judgment against
Fuller prior to the entry of judgment against the remaining,

government has satisfied its burden to demonstrate that its tax

liens, arising from Fuller's tax liabilities, attach to the Bow

Property owned by the Trust.

1. Attachment of the Government's Tax Liens to the Bow
   Property

The government initially sought attachment of its tax liens

to the Bow Property owned by the Trust based two theories: (1)

the Trust is the alter ego of Fuller; and (2) the Trust is the

nominee of Fuller.  In its supplemental brief, however, the

government appears to have abandoned its alter ego argument and

solely asserts that the Trust is the nominee of Fuller.

Under 26 U.S.C. § 6321, "the government may impose a lien

on property in the hands of a nominee or alter ego of the

taxpayer."  In re Callahan, 419 B.R. 109, 124 (Bankr. D. Mass.

---

non-defaulting defendants where the government initially
maintained that the issue of priority could be addressed after
the Bow Property sold.  Fed. R. Civ. P. 54(b) ("[T]he court may
direct entry of a final judgment as to one or more, but fewer
than all, claims or parties only if the court expressly
determines that there is no just reason for delay."); see also
United States v. Derparseghian, No. CV 15-08653-AB, 2016 WL
8135349, at *2-3 (C.D. Cal. Aug. 16, 2016) (analyzing the
language of Rule 54(b) and entering default judgment against a
lienholder defendant in a tax liability enforcement action where
judgment against the defendant would not lead to an inconsistent
result as to other defendants).  In its supplemental brief,
however, the government raised the fact that the non-defaulting
parties filed a stipulation as to the priority of the proceeds
from a sale of the Bow Property.  (Doc. No. 21).

2009).  To determine whether property is in the hands of the
taxpayer's nominee, the court must "initially look to state law
to determine what rights the taxpayer has in the property . . .
then to federal law to determine whether the taxpayer's state-
delineated rights qualify as 'property' or 'rights to property'
within the compass of the federal tax lien legislation."  Id.
(quoting Drye v. United States, 528 U.S. 49, 58 (1999)).

In the state law analysis, courts must "consider the
substance of the rights state law provides, not merely the labels
the State gives these rights or the conclusions it draws from
them."  United States v. Craft, 535 U.S. 274, 279 (2002).  Thus,
"where state law creates a legal fiction that allows an
otherwise cognizable property interest arising under state law
to be dispelled, federal law will look past the fiction and
consider the reality of the property interest."  In re Callahan,
419 B.R. at 125 (citing Craft, 535 U.S. at 279).

> a. Fuller's Rights in the Bow Property Under New
>    Hampshire Law

The New Hampshire Uniform Trust Code provides that the
property in a revocable trust is subject to the claims of the
settlor's creditors during the lifetime of the settlor
regardless of whether the trust contains a spendthrift
provision.  N.H. Rev. Stat. Ann. § 564-B:5-505(a)(1).  The term
"settlor" is defined as a "person, including a testator, who

creates, or contributes property to, a trust." Id. § 564-B:1-103(15).  Further, New Hampshire law does not recognize the creation of a trust when the same person is the sole trustee and sole beneficiary of the trust.  See N.H. Rev. Stat. Ann. § 564-B:4-402(a) (stating that a trust is only created if "the same person is not the sole trustee, the sole current beneficiary and the sole remainder beneficiary.").

In support of its claim to attach the federal tax liens to the Bow Property, the government submitted a copy of the Declaration of Trust.[3]  (Doc. No. 25-4).  The Declaration of Trust identifies the Trust as revocable and Frederick J. Fuller as both the grantor and the trustee of the Trust.  The government also submitted a copy of the Certificate of Trustee, (Doc. No. 25-3), which identifies Fuller as the sole trustee and sole beneficiary of the Trust.  Where Fuller is expressly identified as the grantor of the Trust, he is the settlor of the

---

[3] "On a motion for default judgment, a court may . . . consider any affidavits or evidence on the record." Amguard Ins. Co. v. Santos Remodeling, Inc., No. 14-14745-FDS, 2016 WL 424961, at *1 n.1 (D. Mass. Feb. 3, 2016) (citing KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 17-20 (1st Cir. 2003)); see also Shannon F. v. Portsmouth School Dist. SAU 52, No. 14-cv-368-JL, 2017 WL 1233815, at *6 (D.N.H. Jan. 27, 2017) (quotation omitted) (recognizing that based on similarities in the Rule 55 and Rule 12(b)(6) standards, the court can consider "documents central to the plaintiff's claims."), report and recommendation adopted, (D.N.H. Feb. 22, 2017).

Trust, and where the Trust is revocable, its assets would be subject to Fuller's creditor claims under New Hampshire law.  In addition, where Fuller is the sole trustee and sole beneficiary of the Trust, the legal fiction of the Trust could be set aside, leaving Fuller as the true owner of the Trust assets. Accordingly, the court finds that Fuller has a cognizable property and ownership interest in the assets of the Trust, including the Bow Property, under New Hampshire law.

> ### b. Attachment of the Lien to the Bow Property Under the Nominee Theory

"The nominee theory focuses upon the taxpayer's relationship to a particular piece of property, asking whether the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership." United States v. Isaacson, No. 09-cv-332-JL, 2011 WL 2783993, at *2 (D.N.H. July 15, 2011) (internal quotation marks omitted) (quoting Holman v. United States, 505 F.3d 1060, 1065 (10th Cir. 2007)).  In analyzing the taxpayer's relationship to the property, courts have considered the following factors:

- No consideration or inadequate consideration is paid by the nominee;

- Property is placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;

- A close relationship between the transferor or the nominee exists;

- Conveyances were not recorded;

- The transferor retained possession of the property;[and]

- The transferor continued to enjoy the benefits of the transferred property.

Id. (quoting United States v. Kattar, 81 F.Supp.2d 262, 273-75 (D.N.H.1999)).

Applying the factors to the relationship between Fuller and the Bow Property, the court finds the government satisfied its burden to demonstrate that the Trust is a nominee of Fuller. In particular, based on the admitted facts, Fuller is the grantor, beneficiary, and sole trustee of the Trust. Accordingly, the relationship between the transferor and the nominee is one and the same. Further, as the sole beneficiary of the Trust, Fuller continues to enjoy the benefits of the Bow Property. There are no other facts in the record to suggest that any of the other factors weigh against the Trust being the nominee of Fuller. Thus, the court finds that the Trust is the nominee of Fuller, and therefore, the government's tax liens for Fuller's tax liabilities attach to the Bow Property owned by the Trust.

C. Count III

The government seeks to enforce its tax liens under 26 U.S.C. § 7403, which provides that "where a claim or interest of

the United States therein is established, [the court] may decree

a sale of such property, by the proper officer of the court, and

a distribution of the proceeds of such sale according to the

findings of the court in respect to the interests of the parties

and of the United States."  Given this court's finding that the

government is entitled to default judgment as to liability for

Count II, the court similarly finds that the government

established a claim to the Bow Property and is therefore

entitled to enforce its tax liens under 26 U.S.C. § 7403.

## II.   Damages[4]

In the case of defaulting defendants, "the amount of

damages are not necessarily established as a result of the

default."  Int'l Union of Operating Eng'rs, Local 4 v. Stanley

Excavation, 243 F.R.D. 25, 27 (D. Me. 2007) (quotation omitted).

Rather, allegations of damages "must be established by proof

unless the damages involve a sum certain or are for

liquidated damages."  Id. (quotation omitted).  While delinquent

tax assessments can constitute liquidated damages, see KPS &

Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 20 (1st Cir. 2003),

courts have applied Rule 55(b)(2) to make a judicial

---

[4] The court did not hold a hearing on damages.  Rule
55(b)(2) "makes an evidentiary hearing an available tool, not a
prerequisite, to the determination of a damage award."
AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 436 (1st Cir.
2015).

determination on damages when the government's assessments are not sufficiently clear or fail to properly itemize unpaid taxes, statutory penalties, and interest.  See United States v. Greer, No. 18-02497 (KBJ), 2020 WL 6596703, at *3 (D.D.C. Feb. 28, 2020) (applying Rule 55(b)(2) to unpaid taxes, statutory penalties, and interest when the amounts are not properly itemized); United States v. Myers, 236 F. Supp. 3d 702, 710 (E.D.N.Y. 2017) (entering default judgment under Rule 55(b)(2) and explaining how interest and statutory accruals on unpaid taxes should be calculated).

    "Tax assessments by the IRS are presumed correct."  United States v. Limanni, No. 12-cv-114-JD, 2015 WL 1345033, at * 2 (D.N.H. Mar. 23, 2015) (citing  Hostar Marine Transport Sys., Inc. v. United States, 592 F.3d 202, 208 (1st Cir.2010)); United States v. Chesir, No. CV-08-2552, 2011 WL 3040536, at *3 (E.D.N.Y. June 27, 2011) (presuming the government's tax calculations, set forth in affidavits, to be correct in a default judgment action); see also United States v. Beckwith, No. 2:18-cv-00322-NT, 2019 WL 6534123, at *4 (D. Me. Dec. 4, 2019) (noting that certificates of assessments are presumptive proof of notice of the assessments and demands for payment). The presumption of correctness can only be overcome by sufficient evidence to contradict the tax liability. Limanni, 2015 WL 1345033, at * 2.

14

In support of its assessment amount, the government
submitted two declarations of Mary Bishop, a Revenue Officer
Advisor with the Internal Revenue Service ("IRS").  (Doc. Nos.
20-2, 25-6).  In her first declaration, Bishop testified to her
review of an INTST Report, which contains a breakdown of the
taxpayer's balance due, including the tax assessment amount,
interest, and penalties.  Decl. of Mary Bishop, Dec. 15, 2022,
("Bishop Decl. I") (Doc. No. 20-2, ¶ 2).  The INTST Report is
generated based on information maintained by the IRS in its
Integrated Data Retrieval System ("IDRS"), which stores and
tracks taxpayer account information.  Id.  In her second
declaration, Bishop submitted an updated INTST Report, and
attested to Fuller's total balance due as of March 15, 2023
totaling $687,379.12.  See Decl. of Mary Bishop, April 14, 2023,
("Bishop Decl. II") (Doc. No. 25-6, ¶ 5).  Bishop also submitted
additional supporting tax records, such as Fuller's Form 1040,
and attested to her review of those tax records.  Id. ¶ 6.
Based on the government's submissions,[5] the court finds that the
government is entitled to judgment in the amount of $687,379.12.

_____

[5] At the February 9, 2023 case management conference, the
court questioned whether the government satisfied its burden to
support its requested judgment amount, where Bishop did not
attest to reviewing the tax records underlying the INTST Report.
See United States v. Kumar, No. 19 Civ. 4501, 2021 WL 7908019,
at *11 (E.D.N.Y. Mar. 29, 2021) (noting that the government's
proof of damages could have been stronger).  Where the

**CONCLUSION**

For the foregoing reasons, the court recommends that the district judge: (1) grant the government's motion for default judgment (Doc. No. 20) as to all claims (Counts I, II, and III); (2) enter judgment in the amount of $687,379.12 as of March 15, 2023 and subject to statutory additions and interest, which continue to accrue pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c); and (3) direct the government to file an appropriate motion, consistent with 26 U.S.C. § 7403, within 14 days of an order approving this Report and Recommendation.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to

---

government's supplemental submission cures the court's concerns, the court declines to address the sufficiency of the government's initial submission.

appeal the district court's order.   See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

July 17, 2023

cc:   Frederick J. Fuller
      Counsel of Record